**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HASAN DAAS, BRAD GRIER, WESLEY INMAN, MATT LEBOEUF, DAMIAN LUNA, LLOYD TRUSHEL, MARK WHITE, and DONGSHENG LIU, on behalf of themselves and all others similarly situated, | **Civil Action No.: 17-cv-6944** <br><br> **CLASS ACTION COMPLAINT** |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| NEULION, INC., and ZUFFA, LLC, | |
| Defendants. | |

Plaintiffs Hasan Daas, Brad Grier, Wesley Inman, Matt LeBoeuf, Damian Luna, Lloyd Trushel, Mark White, and Dongsheng Liu ("Plaintiffs") bring this class action lawsuit on behalf of themselves and all others similarly situated against NeuLion, Inc. ("NeuLion") and Zuffa, LLC ("Zuffa") (collectively referred to as "Defendants"), and allege the following upon personal knowledge as to their own acts and upon information and belief based upon the investigation conducted by counsel as to all other matters.

**PRELIMINARY STATEMENT**

1.     Plaintiffs bring this consumer protection class action lawsuit against Defendants based on Defendants' defective live streaming services rendered in connection with the August 26, 2017, boxing matches at T-Mobile Arena in Las Vegas, Nevada, including the matches between Floyd Mayweather, Jr. and Conor McGregor (the "Boxing Matches").[1]

2.     As a result of Defendants' server and/or other technical failures in streaming the Boxing Matches, Plaintiffs and other consumers were unable to view the Boxing Matches, or a

---

[1] The other matches on the fight card were the following title matches: Gervonta Davis vs. Francisco Fonseca, Nathan Cleverly vs. Badou Jack, and Andrew Tabiti vs. Steve Cunningham.

substantial portion thereof.

3.    Had Plaintiffs and other consumers known that Defendants' pay-per-view streaming services would be defective, they would not have purchased them or would have paid significantly less for them.  Therefore, Plaintiffs and other consumers have suffered injury in fact as a result of Defendants' unlawful practices.

4.    Plaintiffs bring this class action on behalf of a Nationwide Class, a Virginia Subclass, an Alabama Subclass, a Connecticut Subclass, a Texas Subclass, a Massachusetts Subclass, a Florida Subclass, an Arizona Subclass, and a California Subclass (collectively referred to as the "Classes").[2]

5.    Plaintiffs, on behalf of themselves and the Classes, are seeking damages, restitution, declaratory relief, and all other remedies this Court deems appropriate.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of the statutory minimum damages, exclusive of interests and costs, and Plaintiffs, as well as most members of the proposed Classes, which total more than 100 class members, are citizens of states different from the state of Defendants.

7.    This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts in New York or otherwise intentionally did avail themselves of the markets within New York, by rendering streaming services to New York consumers.  In addition, Defendant NeuLion, Inc. maintains its principal place of business in New York.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

---

[2] Classes defined further, *infra*, in paragraphs 33-41.

substantial part of the events giving rise to this action occurred in this District.

## PARTIES

9.      Plaintiff Hasan Daas is a resident of Virginia.  Mr. Daas purchased the pay-per-view services offered by Defendants through UFC.tv for $99.95 in order to watch the Boxing Matches.  However, due to defective streaming services rendered by Defendants, when Mr. Daas attempted to stream the Boxing Matches on August 26, 2017, he was unable to receive a clear feed to watch the Boxing Matches.   In purchasing the pay-per-view services, Mr. Daas relied on Defendants to provide streaming services that were free of defect.  Mr. Daas would not have purchased the services or would have paid significantly less for them had he known that they were defective.  Mr. Daas, therefore, suffered injury in fact and lost money as a result of Defendants' unfair and unlawful practices, as described herein.

10.      Plaintiff Brad Grier is a resident of Alabama.  Mr. Grier purchased the pay-per-view services offered by Defendants through UFC.tv for $99.95 in order to watch the Boxing Matches.  However, due to defective streaming services rendered by Defendants, when Mr. Grier attempted to stream the Boxing Matches on August 26, 2017, he was unable to receive a clear feed to watch the Boxing Matches.   In purchasing the pay-per-view services, Mr. Grier relied on Defendants to provide streaming services that were free of defect.  Mr. Grier would not have purchased the services or would have paid significantly less for them had he known that they were defective.  Mr. Grier, therefore, suffered injury in fact and lost money as a result of Defendants' unfair and unlawful practices, as described herein.

11.      Plaintiff Wesley Inman is a resident of Connecticut.  Mr. Inman purchased the pay-per-view services offered by Defendants through UFC.tv for $99.95 in order to watch the Boxing Matches.  However, due to defective streaming services rendered by Defendants, when Mr. Inman

attempted to stream the Boxing Matches on August 26, 2017, he was unable to receive a clear feed to watch the Boxing Matches.  In purchasing the pay-per-view services, Mr. Inman relied on Defendants to provide streaming services that were free of defect.  Mr. Inman would not have purchased the services or would have paid significantly less for them had he known that they were defective.  Mr. Inman, therefore, suffered injury in fact and lost money as a result of Defendants' unfair and unlawful practices, as described herein.

12.     Plaintiff Matt LeBoeuf is a resident of Texas.  Mr. LeBoeuf purchased the pay-per-view services offered by Defendants through UFC.tv for $99.95 in order to watch the Boxing Matches.  However, due to defective streaming services rendered by Defendants, when Mr. LeBoeuf attempted to stream the Boxing Matches on August 26, 2017, he was unable to receive a clear feed to watch the Boxing Matches.  In purchasing the pay-per-view services, Mr. LeBoeuf relied on Defendants to provide streaming services that were free of defect.  Mr. LeBoeuf would not have purchased the services or would have paid significantly less for them had he known that they were defective.  Mr. LeBoeuf, therefore, suffered injury in fact and lost money as a result of Defendants' unfair and unlawful practices, as described herein.

13.     Plaintiff Damian Luna is a resident of Massachusetts.  Mr. Luna purchased the pay-per-view services offered by Defendants through UFC.tv for $99.95 in order to watch the Boxing Matches.  However, due to defective streaming services rendered by Defendants, when Mr. Luna attempted to stream the Boxing Matches on August 26, 2017, he was unable to receive a clear feed to watch the Boxing Matches.  In purchasing the pay-per-view services, Mr. Luna relied on Defendants to provide streaming services that were free of defect.  Mr. Luna would not have purchased the services or would have paid significantly less for them had he known that they were defective.  Mr. Luna, therefore, suffered injury in fact and lost money as a result of Defendants'

unfair and unlawful practices, as described herein.

14.    Plaintiff Lloyd Trushel is a resident of Florida.  Mr. Trushel purchased the pay-per-view services offered by Defendants through UFC.tv for $99.95 in order to watch the Boxing Matches.  However, due to defective streaming services rendered by Defendants, when Mr. Trushel attempted to stream the Boxing Matches on August 26, 2017, he was unable to receive a clear feed to watch the Boxing Matches.  In purchasing the pay-per-view services, Mr. Trushel relied on Defendants to provide streaming services that were free of defect.  Mr. Trushel would not have purchased the services or would have paid significantly less for them had he known that they were defective.  Mr. Trushel, therefore, suffered injury in fact and lost money as a result of Defendants' unfair and unlawful practices, as described herein.

15.    Plaintiff Mark White is a resident of Arizona.  Mr. White purchased the pay-per-view services offered by Defendants through UFC.tv for $99.95 in order to watch the Boxing Matches.  However, due to defective streaming services rendered by Defendants, when Mr. White attempted to stream the Boxing Matches on August 26, 2017, he was unable to receive a clear feed to watch the Boxing Matches.  In purchasing the pay-per-view services, Mr. White relied on Defendants to provide streaming services that were free of defect.  Mr. White would not have purchased the services or would have paid significantly less for them had he known that they were defective.  Mr. White, therefore, suffered injury in fact and lost money as a result of Defendants' unfair and unlawful practices, as described herein.

16.    Plaintiff Dongsheng Liu is a resident of California.  Mr. Liu purchased the pay-per-view services offered by Defendants through UFC.tv for $99.95 in order to watch the Boxing Matches.  However, due to defective streaming services rendered by Defendants, when Mr. Liu attempted to stream the Boxing Matches on August 26, 2017, he was unable to receive a clear feed

to watch the Boxing Matches. In purchasing the pay-per-view services, Mr. Liu relied on Defendants to provide streaming services that were free of defect. Mr. Liu would not have purchased the services or would have paid significantly less for them had he known that they were defective. Mr. Liu, therefore, suffered injury in fact and lost money as a result of Defendants' unfair and unlawful practices, as described herein.

17.    Defendant NeuLion, Inc. is a Delaware corporation with its principal place of business in Plainview, New York. NeuLion specializes in digital video broadcasting and live and on demand streaming for some of the country's biggest brands. NeuLion provided the defective live streaming services for the Boxing Matches for UFC® and other global rights holders including Sky Sports Box Office, ELEVEN SPORTS, and Sky Fan Pass. NeuLion also managed the authentication and purchasing of the pay-per-view streaming of the Boxing Matches.

18.    Defendant Zuffa, LLC is a limited liability company based in Las Vegas, Nevada. Zuffa, which owns UFC.tv, offers sports promotional services and engages in the promotion of mixed martial arts. Zuffa contracted with Defendant NeuLion to provide the defective live streaming services to Plaintiffs and the proposed Classes.

## FACTUAL ALLEGATIONS

19.    The highly anticipated and previous gate[3] record-breaking boxing match between Floyd Mayweather, Jr. and Conor McGregor occurred on August 26, 2017, at T-Mobile Arena in Las Vegas, Nevada.

20.    To capitalize on the explosive consumer demand to watch the Mayweather/McGregor fight live, as well as the other title matches, a number of companies, including Defendant Zuffa, contracted with Defendant NeuLion to offer live pay-per-view

---

[3] The term "gate" refers to the amount of money made from ticket sales.

streaming services, allowing consumers across the country to purchase and watch the Boxing

Matches live in the convenience of their homes and other venues.

21.    In an interview with Sports Money about the Boxing Matches, NeuLion executive

vice president Chris Wagner boasted "[w]e control the whole event end-to-end . . . The fans feel

like they're talking and working with UFC[.tv] or Sky Sports, and it's NeuLion doing it all the way

through."[4]



22.    Defendants' pay-per-view streaming services for the Boxing Matches were sold to

consumers for $99.95.

23.    In announcing that NeuLion would be selling their streaming services for the

Boxing Matches, Defendant NeuLion's CEO Roy Reichbach stated that Defendant Zuffa and its

---

[4]    https://www.forbes.com/sites/chrissmith/2017/08/23/neulion/#460e3013749e    (last    visited
September 12, 2017).

other "partners recognize the value of our depth of global experience and continued focus on delivering outstanding quality."[5]

24.     Defendants promoted, and Plaintiffs and other consumers purchased, the pay-per-view streaming services provided by Defendants, in reliance on Defendants rendering a defect-free live streaming of the Boxing Matches.

25.     However, due to Defendants' server and/or other technical failures, the live streaming services rendered by Defendants were defective and did not allow Plaintiffs and other consumers to view the Boxing Matches live in their entirety.

26.     Specifically, when Plaintiffs attempted to stream the Boxing Matches live, they were unable to receive a feed and were unable to watch the Boxing Matches.

27.     Other consumers were similarly affected and were likewise unable to watch the Boxing Matches live in their entirety.

28.     During and/or shortly after the Boxing Matches, consumers took to Facebook and other social networking platforms to express their issues and frustrations with trying to stream the Boxing Matches which Defendants provided through their pay-per-view streaming services.   A number of customer complaints are depicted below:[6]



---

[5] http://mmajunkie.com/2017/08/struggled-stream-the-money-fight-ufc-customers-contact-neulion (last visited September 12, 2017).
[6] https://www.facebook.com/search/top/?q=ufc.tv%20app (last visited September 12, 2017).



29.     The value in watching a sporting event live is greater than the value of watching it on a replay, as the outcome of the sporting event is then known and the excitement is gone.

30.     Plaintiffs and other similarly situated consumers did not know, and had no reason to know, that Defendants' pay-per-view services in connection with the Boxing Matches would be defective.

31.     Had Plaintiffs and other similarly situated consumers known that Defendants were not going to provide them with a defect-free streaming service, they would not have purchased the services or would have paid significantly less for them.

32.     Therefore, Plaintiffs and other consumers have suffered injury in fact as a result of Defendants' unlawful practices.

## CLASS ACTION ALLEGATIONS

33.     Plaintiffs bring this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of themselves and all persons in the United States who purchased live pay-per-view streaming services provided by Defendants in connection with the Boxing Matches (the "Nationwide Class").

34.     Plaintiff Daas also seeks to certify a class of all natural persons residing in Virginia who purchased live pay-per-view streaming services provided by Defendants in connection with

the Boxing Matches (the "Virginia Subclass").

35.    Plaintiff Grier also seeks to certify a class of all natural persons residing in Alabama who purchased live pay-per-view streaming services provided by Defendants in connection with the Boxing Matches (the "Alabama Subclass").

36.    Plaintiff Inman also seeks to certify a class of all natural persons residing in Connecticut who purchased live pay-per-view streaming services provided by Defendants in connection with the Boxing Matches (the "Connecticut Subclass").

37.    Plaintiff LeBoeuf also seeks to certify a class of all natural persons residing in Texas who purchased live pay-per-view streaming services provided by Defendants in connection with the Boxing Matches (the "Texas Subclass").

38.    Plaintiff Luna also seeks to certify a class of all natural persons residing in Massachusetts who purchased live pay-per-view streaming services provided by Defendants in connection with the Boxing Matches (the "Massachusetts Subclass").

39.    Plaintiff Trushel also seeks to certify a class of all natural persons residing in Florida who purchased live pay-per-view streaming services provided by Defendants in connection with the Boxing Matches (the "Florida Subclass").

40.    Plaintiff White also seeks to certify a class of all natural persons residing in Arizona who purchased live pay-per-view streaming services provided by Defendants in connection with the Boxing Matches (the "Arizona Subclass").

41.    Plaintiff Liu also seeks to certify a class of all natural persons residing in California who purchased live pay-per-view streaming services provided by Defendants in connection with the Boxing Matches (the "California Subclass").

42.    Excluded from the Classes are Defendants, the officers and directors of Defendants

at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.  Any judge and/or magistrate judge to whom this action is assigned and any members of such judges' staffs and immediate families are also excluded from the Classes.

43.    Plaintiffs hereby reserve the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

44.    Plaintiffs are members of the Classes.

45.    Numerosity: Thousands of consumers purchased the streaming services provided by Defendants in connection with the Boxing Matches.  Accordingly, members of the Classes are so numerous that their individual joinder herein is impractical.  While the precise number of class members and their identities are unknown to Plaintiffs at this time, the number may be determined through discovery of Defendants' records.

46.    Common Questions Predominate: Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to whether the pay-per-view services were defective and whether Defendants violated numerous consumer protection statutes in providing defective services.

47.    Typicality: Plaintiffs' claims are typical of the claims of the Classes they seek to represent in that Plaintiffs and members of the Classes purchased Defendants' defective streaming services and were similarly unable to enjoy a defect-free viewing experience of the Boxing Matches.

48.    Adequacy: Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the members of the Classes they seek to represent,

they have retained competent counsel experienced in prosecuting class actions, and they intend to vigorously prosecute this action. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiffs and their counsel.

49.    Superiority: A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Classes. The size of each claim is too small to pursue individually and each individual class member will lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. The class action mechanism is designed to remedy harms like this one that although not insignificant are too small in value to warrant the filing of individual lawsuits.

### FIRST CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
**(On Behalf of the Nationwide Class, or in the alternative, the Virginia Subclass, the Alabama Subclass, the Connecticut Subclass, the Texas Subclass, the Massachusetts Subclass, the Florida Subclass, the Arizona Subclass, and the California Subclass)**

50.    Plaintiffs reallege and incorporate by reference the paragraphs above as if they were fully set forth herein.

51.    Plaintiffs bring this claim on behalf of themselves and the members of the proposed Nationwide Class against Defendants. In the alternative, each Plaintiff brings this claim on behalf of the Subclass based of his or her respective state of residence.

52.    A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

53.    To be merchantable, goods must at least be fit for the ordinary purpose for which such goods are used.

54.    Defendants are merchants with respect to providing broadcast and live streaming, including the pay-per-view streaming of the Boxing Matches.   Therefore, a warranty of merchantability was implied every time Defendants provided broadcast and/or live streaming for the Boxing Matches.

55.    By providing the pay-per-view streaming for the Boxing Matches, Defendants impliedly warranted that the live streaming would be defect-free and fit for its ordinary purpose. Ordinary streaming of live events is not defective and allows consumers to view content without issue in real time.

56.    However, Defendants did not provide to Plaintiffs and other members of the Nationwide Class live streaming of the Boxing Matches that was free of defect and fit for its ordinary purpose.   Instead, Plaintiffs and other members of the Nationwide Class received substantially defective streaming and could not watch the Boxing Matches in their entirety.

57.    Therefore, the streaming provided by Defendants was not merchantable and Defendants have breached their implied warranty of merchantability in regard to the streaming.

58.    If Plaintiffs and other members of the Nationwide Class had known that the streaming was defective, they would not have purchased it and/or would not have been willing to pay as much for it.   Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiffs and other members of the Nationwide Class have suffered injury and are entitled to recover all damages afforded under the law.

## SECOND CAUSE OF ACTION
### Breach of Contract
**(On Behalf of the Nationwide Class, or in the alternative, the Virginia Subclass, the Alabama Subclass, the Connecticut Subclass, the Texas Subclass, the Massachusetts Subclass, the Florida Subclass, the Arizona Subclass, and the California Subclass)**

59.    Plaintiffs reallege and incorporate by reference the paragraphs above as if they were fully set forth herein.

60.    Plaintiffs bring this claim on behalf of themselves and the members of the proposed Nationwide Class against Defendants. In the alternative, each Plaintiff brings this claim on behalf of the Subclass based of his or her respective state of residence.

61.    In purchasing the pay-per-view streaming services, Plaintiffs and members of the Nationwide Class have formed valid contracts that are supported by sufficient consideration, pursuant to which Defendants were obligated to provide live streaming services that were free of defect.

62.    Defendants have materially breached these contracts with Plaintiffs and other members of the Nationwide Class by providing streaming services that were highly defective.

63.    As a direct and proximate result of Defendants' breach, Plaintiffs and members of the Nationwide Class were damaged in that they received streaming services with less value than the amounts paid for them.  Moreover, Plaintiffs and members of the Nationwide Class have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the services, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### Quasi Contract/Unjust Enrichment
**(On Behalf of the Nationwide Class, or in the alternative, the Virginia Subclass, the Alabama Subclass, the Connecticut Subclass, the Texas Subclass, the Massachusetts Subclass, the Florida Subclass, the Arizona Subclass, and the California Subclass)**

64.    Plaintiffs reallege and incorporate by reference the paragraphs above as if they were fully set forth herein.

65.    Plaintiffs bring this claim on behalf of themselves and the members of the proposed Nationwide Class against Defendants.  In the alternative, each Plaintiff brings this claim on behalf of the Subclass based of his or her respective state of residence.

66.    As alleged herein, Plaintiffs and members of the Nationwide Class have reasonably

relied on Defendants to provide defect-free streaming services in connection with the Boxing Matches but have not received all of the benefits from Defendants. Plaintiffs and members of the Nationwide Class have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiffs and members of the Nationwide Class.

67.    The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Nationwide Class – i.e., Plaintiffs and members of the Nationwide Class did not receive the full value of the benefit conferred upon Defendants.

68.    Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them without paying Plaintiffs and members of the Nationwide Class back for the difference of the full value of the benefits compared to the value actually received.

69.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and members of the Nationwide Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

**FOURTH CAUSE OF ACTION**
**Violation of the Virginia Consumer Protection Act ("VCPA")**
**Va. Code Ann. § 59.1-196, *et seq*.**
***(On Behalf of the Virginia Subclass)***

70.    Plaintiff Daas realleges and incorporates by reference the paragraphs above as if they were fully set forth herein.

71.    Plaintiff Daas brings this claim on behalf of himself and the members of the proposed Virginia Subclass against Defendants.

72.    Defendants' pay-per-view streaming of the Boxing Matches is a "good" pursuant to Va. Code Ann. § 59.1-198 and the purchases of the pay-per-view streaming by Plaintiff Daas

and members of the Virginia Subclass constitute "consumer transactions" pursuant to Va. Code Ann. § 59.1-198.

73.     Va. Code Ann. § 59.1-200(A)(5) prohibits "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits."  By advertising their pay-per-view streaming as streaming that will enable consumers to watch the Boxing Matches, Defendants represented that the pay-per-view streaming had a characteristic – ordinary, defect-free live streaming – which it did not have.  Therefore, Defendants have violated Va. Code Ann. § 59.1-200(A)(5).

74.     Va. Code Ann. § 59.1-200(A)(6) prohibits "[m]isepresenting that goods or services are of a particular standard, quality, grade, style, or model."  By advertising their pay-per-view streaming as streaming that will enable consumers to watch the Boxing Matches, Defendants represented that such streaming had a particular standard and quality, when it did not.  Therefore, Defendants have violated Va. Code Ann. § 59.1-200(A)(6).

75.     Va. Code Ann. § 59.1-200(A)(8) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  By promoting and advertising their pay-per-view streaming as ordinary defect-free streaming, and then intentionally not providing the streaming to meet the expectations that it will be defect-free, Defendants have violated Va. Code Ann. § 59.1-200(A)(8).

76.     Furthermore, Defendants violated the VCPA by failing to disclose that the pay-per-view streaming for the Boxing Matches would be defective.

77.     At all relevant times, Defendants knew or reasonably should have known that the pay-per-view streaming was and would be defective, and that Plaintiff Daas and other members of the Virginia Subclass would reasonably and justifiably rely on Defendants to provide defect-free pay-per-view streaming of the Boxing Matches.

78.     Plaintiffs and members of the Virginia Subclass reasonably and justifiably relied on Defendants to provide defect-free pay-per-view streaming of the Boxing Matches.

79.     Plaintiff Daas and members of the Virginia Subclass suffered injuries caused by Defendants because they would not have purchased or would have paid significantly less for the streaming service had they known that Defendants' streaming of the Boxing Matches would be defective.

80.     Under Va. Code Ann. § 59.1-204, Plaintiff Daas and members of the Virginia Subclass seek damages, reasonable attorneys' fees and costs, and all other remedies the Court deems appropriate for Defendants' violations of the VCPA.

**FIFTH CAUSE OF ACTION**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***
**(*for the California Subclass*)**

81.     Plaintiff Liu realleges and incorporates by reference the paragraphs above as if they were fully set forth herein.

82.     Plaintiff Liu brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

83.     UCL § 17200 provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

84.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

85.     Defendants' rendering of defective pay-per-view streaming services was "unlawful" because it violates the CLRA and other applicable laws as described herein.

86.     As a result of Defendants' unlawful business acts and practices, Defendants

have unlawfully obtained money from Plaintiff Liu, and members the California Subclass.

87.     Under the UCL, a business act or practice is "unfair" if the Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

88.     Defendants' conduct was of no benefit to purchasers of their streaming services, as it is immoral, unethical, oppressive, unfair, unlawful, and injurious to Plaintiff Liu and other California consumers to promise ordinary, defect-free streaming services, but then provide highly defective ones.  Therefore, Defendants' conduct was and continues to be "unfair."

89.     As a result of Defendants' unfair business acts and practices, Defendants have unfairly obtained money from Plaintiff Liu, and members of the California Subclass.

90.     Plaintiff Liu requests that this Court cause Defendants to restore this unlawfully and unfairly obtained money to Plaintiff and members of the California Subclass, and to disgorge the profits Defendants made on these transactions.  Otherwise, Plaintiff Liu and members of the California Subclass may be irreparably harmed and/or denied an effective and complete remedy.

### SIXTH CAUSE OF ACTION
### Violation of Florida's Deceptive Trade and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*.
### (*for the Florida Subclass*)

91.     Plaintiff Trushel realleges and incorporates by reference the paragraphs above as if they were fully set forth herein.

92.     Plaintiff Trushel brings this claim individually and on behalf of the members of the proposed Florida Subclass against Defendants.

93.     Plaintiff Trushel and members of the Florida Subclass are "consumers" under Fla. Stat. § 501.203(7), and Defendants' sale and providing of the pay-per-view streaming for the

Boxing Matches constitutes a "trade or commerce" under Fla. Stat. § 501.203(8).

94.     By providing highly defective streaming services for the Boxing Matches, Defendants have violated the FDUTPA by engaging in unfair competition in the conduct of their business and by employing unconscionable acts and practices.

95.     Defendants have also violated the FDUTPA by failing to disclose to Plaintiff Trushel and members of the Florida Subclass that their streaming services for the Boxing Matches would be defective.

96.     Plaintiff Trushel and members of the Florida Subclass relied on Defendant to provide defect-free streaming services for the Boxing Matches.  Furthermore, Defendants knew, or reasonably should have known, that Plaintiff Trushel and members of the Florida Subclass would rely on them to provide ordinary, defect-free streaming services for the Boxing Matches.

97.     Plaintiff Trushel and members of the Florida Subclass suffered injuries caused by Defendants' violations of the FDUTPA because they would not have purchased or would have paid significantly less for the streaming service had they known that Defendants' streaming services would be defective.  As a result, Plaintiff Trushel and members of the Florida Subclass seek damages, declaratory relief, attorneys' fees and all other remedies this Court deems appropriate under the FDUTPA.

### SEVENTH CAUSE OF ACTION
### Violation of Connecticut's Unfair Trade Practices Act ("CUTPA"),
### Conn. Gen. Stat. § 42-110, *et seq.*
### (*for the Connecticut Subclass*)

98.     Plaintiff Inman realleges and incorporates by reference the paragraphs above as if they were fully set forth herein.

99.     Plaintiff Inman brings this claim individually and on behalf of the members of the proposed Connecticut Subclass against Defendants.

19

100.    Plaintiff Inman and members of the Connecticut Subclass are "persons" under Conn. Gen. Stat. § 42-110a(3). Defendants' sale and providing of the pay-per-view streaming services for the Boxing Matches constitutes a "trade" and "commerce" under Conn. Gen. Stat. § 42-110a(4).

101.    Conn. Gen. Stat. § 42-110b states that "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

102.    By providing highly defective streaming services for the Boxing Matches, Defendants have violated Conn. Gen. Stat. § 42-110b by engaging in unfair competition in the conduct of their trade or commerce.

103.    Defendants have also violated the CUTPA by failing to disclose to Plaintiff Inman and members of the Connecticut Subclass that their streaming services for the Boxing Matches would be defective.

104.    Had Plaintiff Inman and members of the Connecticut Subclass known that the streaming services provided by Defendants would be defective, they would not have purchased the services or would have paid significantly less for them.

105.    Therefore, Plaintiff Inman and members of the Connecticut Subclass have "suffer[ed] any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b" by Defendants.  Conn. Gen. Stat. § 42-110g(a).

106.    Plaintiff Inman and members of the Connecticut Subclass seek actual damages, punitive damages, equitable relief, attorneys' fees, and all other remedies this Court deems appropriate under the CUTPA.

## EIGHTH CAUSE OF ACTION
### Violation of Ariz. Rev. Stat. § 44-1521, *et seq*.
### (*for the Arizona Subclass*)

107.    Plaintiff White realleges and incorporates by reference the paragraphs above as if they were fully set forth herein.

108.    Plaintiff White brings this claim individually and on behalf of the members of the proposed Arizona Subclass against Defendants.

109.    Plaintiff White and members of the Arizona Subclass are "persons" under Ariz. Rev. Stat. § 44-1521(6).

110.    Defendants' pay-per-view streaming of the Boxing Matches constitutes "merchandise" under Ariz. Rev. Stat. § 44-1521(5).

111.    Furthermore, Defendants' sale and providing of the pay-per-view streaming of the Boxing Matches constitutes a "sale" under Ariz. Rev. Stat. § 44-1521(7).

112.    Ariz. Rev. Stat. § 44-1522(A) prohibits the "act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise."

113.    By providing highly defective streaming services for the Boxing Matches, Defendants have violated Ariz. Rev. Stat. § 44-1522(A) by engaging in unfair and fraudulent practices in connection with the sale or advertisement of the streaming services.

114.    Defendants have also violated Ariz. Rev. Stat. § 44-1522(A) by intentionally concealing, suppressing, and omitting from Plaintiff White and members of the Arizona Subclass the fact that the streaming services they would provide for the Boxing Matches would be defective.

115.    The fact that the streaming services Defendants would provide for the Boxing

Matches would be defective is material to the reasonable consumer as reasonable consumers purchase the streaming services to watch the Boxing Matches without issue and free of defect.

116.    Had Plaintiff White and members of the Arizona Subclass known that the streaming services provided by Defendants would be defective, they would not have purchased the services or would have paid significantly less for them.

117.    Therefore, Plaintiff White and members of the Arizona Subclass have a claim against Defendants because they have "acquired . . . monies or property, real or personal, by means of any practice declared to be unlawful by [§ 44-1522]."  Ariz. Rev. Stat. § 44-1533.

118.    As a result, Plaintiff White and members of the Arizona Subclass seek compensatory and punitive damages, and all other remedies this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated members of the Classes, seek judgment against Defendants, as follows:

A.    For an order certifying the Classes, naming Plaintiffs as representatives of their respective Classes, and naming Plaintiffs' attorneys as Class Counsel to represent the Classes.

B.    For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

C.    For an order finding in favor of Plaintiffs, and the Classes, on all counts asserted herein;

D.    For an order awarding damages on behalf of the Classes, in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For interest on the amount of any and all economic losses, at the prevailing legal

rate;

  G.  For an order of restitution and all other forms of equitable monetary relief;

  H.  For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees,

expenses, and costs of suit; and

  I.  For any other such relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

  Plaintiffs demand a trial by jury on all issues so triable.

Dated:  New York, New York
   September 12, 2017       Respectfully submitted,

              **FARUQI & FARUQI, LLP**

              By: */s/ Innessa Melamed Huot*
              Innessa Melamed Huot (IH-1916)
              685 Third Ave., 26th Floor
              New York, NY 10017
              Telephone: (212) 983-9330
              Facsimile: (212) 983-9331
              Email: ihuot@faruqilaw.com